Daniel Sadeh, Esq.
**HALPER SADEH LLP**
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JARLATH RUANE,<br><br>    Plaintiff,<br><br>v.<br><br>ALDER BIOPHARMACEUTICALS, INC., ROBERT AZELBY, PAUL CARTER, PAUL CLEVELAND, JEREMY GREEN, A. BRUCE MONTGOMERY, HEATHER PRESTON, CLAY B. SIEGALL, and WENDY YARNO,<br><br>    Defendants. | Case No:<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jarlath Ruane ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.      This is an action against Alder BioPharmaceuticals, Inc. ("Alder" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e), 14(d)(4), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a), and Rule 14d-9 promulgated

1

thereunder by the SEC, 17 C.F.R. § 240.14d-9, in connection with the proposed acquisition of Alder by H. Lundbeck A/S ("Lundbeck"), through its wholly owned subsidiary Violet Acquisition Corp. (the "Proposed Transaction").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(e), 78n(d)(4), and 78t(a)) and Rule 14d-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14d-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misleading statements entered and subsequent damages took place within this District, and/or Defendants conduct business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Alder common stock.

7. Defendant Alder operates as a clinical-stage biopharmaceutical company. It discovers, develops, and commercializes therapeutic antibodies to transform the treatment paradigm for patients with migraine in the United States, Australia, and Ireland. Alder has sought

2

to employ a workforce in Brooklyn, New York. Alder is incorporated in Delaware. Alder's common stock trades on the Nasdaq Global Market under the ticker symbol, "ALDR."

8. Defendant Robert Azelby ("Azelby") is the President, Chief Executive Officer, and a director of the Company.

9. Defendant Paul Carter ("Carter") is a director of the Company.

10. Defendant Paul Cleveland ("Cleveland") is the Chairman of the Board of the Company.

11. Defendant Jeremy Green ("Green") is a director of the Company.

12. Defendant A. Bruce Montgomery ("Montgomery") is a director of the Company.

13. Defendant Heather Preston ("Preston") is a director of the Company.

14. Defendant Clay B. Siegall ("Siegall") is a director of the Company.

15. Defendant Wendy Yarno ("Yarno") is a director of the Company.

16. Defendants Azelby, Carter, Cleveland, Green, Montgomery, Preston, Siegall, and Yarno are collectively referred to herein as the "Individual Defendants."

17. Defendants Alder and the Individual Defendants are collectively referred to herein as the "Defendants."

**OTHER RELEVANT ENTITIES**

18. Lundbeck is a Danish pharmaceutical company that is headquartered in Valby, Denmark. Lundbeck was founded in 1915. Lundbeck engages in the research, development, production, and sale of pharmaceuticals for the treatment of psychiatric and neurological disorders in Europe, North America, and internationally.

**SUBSTANTIVE ALLEGATIONS**

A.  **Background of the Company and the Proposed Transaction**

19. Alder is a clinical-stage biopharmaceutical company focused on transforming migraine treatment through the discovery, development, and commercialization of novel therapeutic antibodies.

20. Alder's lead product candidate, eptinezumab, is an investigational monoclonal antibody ("mAb") delivered by infusion that inhibits the calcitonin gene-related peptide ("CGRP") for the prevention of migraine. According to Alder, if eptinezumab is approved by the United States Food and Drug Administration, it will be the first quarterly, anti-CGRP infusion therapy for migraine prevention.

21. Alder is also developing ALD1910, a preclinical mAb that inhibits pituitary adenylate cyclase-activating polypeptide-38 (PACAP-38) for migraine prevention.

22. On September 16, 2019, Alder and Lundbeck issued a joint press release announcing they had entered into a definitive merger agreement. Under the terms of the agreement, Lundbeck would commence a tender offer for all outstanding shares of Alder, whereby Alder stockholders would be offered an upfront payment of $18.00 per share in cash, along with one non-tradeable Contingent Value Right that entitles them to an additional $2.00 per share upon approval of eptinezumab by the European Medicines Agency. The press release states, in pertinent part:

> **Lundbeck to acquire Alder BioPharmaceuticals – a company committed to transforming migraine treatment and prevention – in a transaction valued at up to USD 1.95 billion net of cash**
>
> September 16, 2019 01:55 ET | **Source:** Alder BioPharmaceuticals, Inc.

- *Enhances Lundbeck's leading portfolio of brain disease therapies with Alder's highly complementary intravenous (IV) therapy for migraine prevention, eptinezumab*
- *Eptinezumab is an investigational monoclonal antibody (mAb) for migraine prevention targeting the calcitonin gene-related peptide (CGRP) with a PDUFA action date of 21 February 2020*
- *If approved, eptinezumab will be the first-to-market IV CGRP therapy for migraine prevention in the U.S.*
- *Lundbeck intends to develop and launch eptinezumab worldwide; U.S. launch, anticipated in 2020, will accelerate and diversify Lundbeck's revenue growth, consistent with the strategy announced in February 2019*
- *The acquisition will further enhance Lundbeck's antibody process and development capabilities*
- *Funding will be through existing cash resources and bank financing*

VALBY, Denmark and BOTHELL, Wash., Sept. 16, 2019 (GLOBE NEWSWIRE) -- H. Lundbeck A/S (Lundbeck) and Alder BioPharmaceuticals (NASDAQ: ALDR) (Alder) today announced a definitive agreement for Lundbeck to acquire Alder. Under the terms of the agreement, Lundbeck will commence a tender offer for all outstanding shares of Alder, whereby Alder stockholders will be offered an upfront payment for USD 18.00 per share in cash, along with one non-tradeable Contingent Value Right (CVR) that entitles them to an additional USD 2.00 per share upon approval of eptinezumab by the European Medicines Agency (EMA), representing a total potential consideration of USD 20.00 per share. The transaction is valued at up to USD 1.95 billion (approximately DKK 13 billion) net of cash, on a fully diluted basis.

*     *     *

**Terms, closing conditions and financing**
Under the terms of the agreement, Lundbeck will commence a tender offer for all outstanding shares of Alder, whereby Alder stockholders will be offered an upfront payment for USD 18.00 per share in cash, along with one non-tradeable Contingent Value Right (CVR) of USD 2.00 per share. The upfront cash consideration represents a 79% premium to Alder's shareholders based on the closing price on 13 September 2019 and an approximately 3% discount based on the 52-week high share price.

The non-tradeable CVR will be paid upon the approval by the European Commission of a "Marketing Authorization Application" in the European Union, through the centralized procedure. The terms of the CVR payment reflect the parties' agreement over the sharing of potential economic upside benefits from such approval. There can be no assurance such approval will occur or that any contingent payment will be made.

5

Lundbeck will acquire any shares of Alder not tendered into the tender offer through a merger for the same per share consideration as will be payable in the tender offer. The merger will be effected as soon as practicable after the closing of the tender offer.

The Board of Alder has unanimously approved the transaction and Alder will file a recommendation to shareholders recommending they tender their shares to Lundbeck. The transaction is expected to close in the fourth quarter of 2019, subject to customary closing conditions, including the tender of more than 50% of all shares of Alder outstanding at the expiration of the offer and receipt of required regulatory clearances, which includes a Hart-Scott-Rodino review in the U.S. The terms and conditions of the tender offer will be described in the tender offer documents, which will be filed with the U.S. Securities and Exchange Commission.

Lundbeck expects to fund the acquisition through existing cash resources and bank financing.

**Advisors**
For Lundbeck, MTS Health Partners and PJT Partners are acting as the exclusive financial advisors and Baker McKenzie is acting as legal advisor in this transaction. For Alder, Centerview Partners is acting as exclusive financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP and Cooley LLP are acting as legal advisors.

23. On September 23, 2019, Alder filed with the SEC a Schedule 14D-9 Solicitation/Recommendation Statement under Section 14(d)(4) of the Exchange Act (the "Solicitation Statement") in connection with the Proposed Transaction.

### B. The Solicitation Statement Contains Materially False and Misleading Statements and Omissions

24. The Solicitation Statement, which recommends that Alder shareholders tender their shares in connection with the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Alder's financial projections; (ii) the financial analyses performed by Alder's financial advisor, Centerview Partners LLC ("Centerview"), in connection with its fairness opinion; and (iii) the sales process leading up to the Proposed Transaction.

25. The omission of the material information (referenced below) renders the following sections of the Solicitation Statement false and misleading, among others: (i) Background of the

6

Offer and the Merger; (ii) Reasons for the Recommendation; (iii) Certain Financial Projections; and (iv) Opinion of Alder's Financial Advisor.

26.     The tender offer is currently set to expire on October 21, 2019 (the "Expiration Date"). It is imperative that the material information that was omitted from the Solicitation Statement be disclosed to the Company's shareholders prior to the Expiration Date to allow them to make an informed decision as to whether to tender their shares. Plaintiff may seek to enjoin Defendants from closing the tender offer or the Proposed Transaction unless and until the material misstatements and omissions (referenced below) are remedied. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1.    Material Omissions Concerning Alder's Financial Projections

27.     The Solicitation Statement omits material information concerning Alder's financial projections.

28.     The Solicitation Statement states that, "in connection with the evaluation of the proposed transaction with Lundbeck and other strategic alternatives, Alder's senior management prepared certain non-public, unaudited prospective financial information for fiscal years 2019 through 2037, including product-level performance detail for fiscal years 2019 through 2037[.]" (the "Management Projections").

29.     The Management Projections consist of three scenarios: Case A, Case B and Case C. The Solicitation Statement provides summary financial tables of each scenario. The Management Projections were provided to the Company's Board in considering, analyzing and evaluating the Proposed Transaction, and were also provided to, and relied upon by, Centerview, in connection with its fairness opinion and related financial analyses.

30. The Solicitation Statement, however, fails to disclose the following concerning the Management Projections: (1) all line items used to calculate (i) EBIT, and (ii) the Case B unlevered free cash flows; (2) the unlevered free cash flows for the years 2019 through 2037 for both the Case A and Case C projections and all underlying line items; (3) the "product-level performance detail for fiscal years 2019 through 2037"; (4) the nature of the "change provided to Centerview by Alder's management to the projected cash balance and net operating losses previously provided by Alder's management"; and (5) a reconciliation of all non-GAAP to GAAP metrics.

31. When a company discloses non-GAAP financial metrics in a Solicitation Statement that was relied upon by its board in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. The SEC has increased its scrutiny of a company's use of non-GAAP financial measures as such measures can be misleading and "crowd out" more reliable GAAP information.[1]

32. The disclosure of Alder's projected financial information is material because it would provide Alder shareholders with a basis to project the future financial performance of Alder

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Oct. 2, 2019) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Alder and its financial advisor, Alder shareholders are unable to determine how much weight, if any, to place on Centerview's fairness opinion in determining whether to tender their shares in connection with the Proposed Transaction.

33. Accordingly, in order to bring the Solicitation Statement into compliance with SEC regulations, as well as to cure the materially misleading nature of the Management Projections, Defendants must provide a reconciliation table of the aforementioned non-GAAP metrics to their most comparable GAAP metrics. Alder must also disclose the line item projections that were used to calculate these non-GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Solicitation Statement not misleading.

34. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Alder shareholders.

### 2. Material Omissions Concerning Centerview's Financial Analyses

35. In connection with the Proposed Transaction, the Solicitation Statement omits material information concerning the analyses performed by Centerview.

36. The Solicitation Statement fails to disclose the following concerning Centerview's "*Discounted Cash Flow Analysis*": (1) the basis for Centerview's "assum[ption] that Alder's unlevered free cash flows would decline in perpetuity after December 31, 2037, at a rate of free cash flow decline year-over-year of 80.0%"; (2) the individual inputs and assumptions underlying the range of discount rates from 11.0% to 13.0%; (3) Alder's fully-diluted shares outstanding; and (4) the implied terminal value of Alder.

37. The Solicitation Statement fails to disclose the following concerning Centerview's *Selected Public Company Analysis*: (1) the "certain operational, business and/or financial characteristics [of the selected companies] that, for purposes of Centerview's analysis, may be considered similar to those of Alder"; (2) the individual multiples and financial metrics of each of the selected companies utilized by Centerview in its analysis; and (3) the "[s]elected companies with Enterprise Value/2021 Revenue multiples of greater than 30x [that] were excluded from the[] calculations as outliers."

38. The Solicitation Statement fails to disclose the following concerning Centerview's *Selected Precedent Transactions Analysis*: (1) the "certain characteristics [of the selected transactions] that, for the purposes of this analysis, may be considered similar to certain characteristics of Alder"; (2) the individual multiples and financial metrics of each of the selected companies utilized by Centerview in its analysis; (3) the individual premiums paid in each transaction utilized by Centerview in its analysis; and (4) Alder's fully-diluted shares outstanding.

39. The Solicitation Statement fails to disclose the following concerning Centerview's analysis of Wall Street research analyst reports of Alder: (1) the individual price targets for Alder observed by Centerview in its analysis; and (2) the sources of those price targets.

40. With respect to Centerview's analysis of premiums paid, the Solicitation Statement fails to disclose: (1) the premiums paid in the transactions observed by Centerview; and (2) Centerview's basis for applying a range of 40% to 85% to Alder's volume weighted average trading price during the 30-day period ended September 13, 2019.

41. The Solicitation Statement also fails to disclose the nature of the "change provided to Centerview by Alder's management to the projected cash balance and net operating losses previously provided by Alder's management and the ***resulting revisions to Centerview's financial***

*analyses presented to the Alder Board on September 14, 2019*." (Emphasis added).

42. The valuation methods, underlying assumptions, and key inputs used by Centerview in rendering its purported fairness opinion must be fairly disclosed to Alder shareholders. The description of Centerview's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Alder shareholders are unable to fully understand Centerview's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to tender their shares in connection with the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Alder shareholders.

**3. Material Omissions Concerning the Sales Process Leading to the Proposed Transaction**

43. The Solicitation Statement omits material information concerning the sales process leading up to the Proposed Transaction.

44. The Solicitation Statement provides that:

Alder entered into non-disclosure agreements with eleven (11) counterparties, including Lundbeck, in anticipation of exchanging confidential information to evaluate an Ex-U.S. Partnership. Alder entered into the Nondisclosure Agreement with Lundbeck on January 9, 2019, which contained a standstill provision. Two (2) other nondisclosure agreements entered into by Alder contained standstills which, by their terms, remain in effect following the announcement of this transaction and the execution of the Merger Agreement. One (1) of these two (2) counterparties did not pursue the Ex-U.S. Partnership after conducting preliminary due diligence investigations, and the other counterparty submitted terms for the Ex-U.S. Partnership that were not viewed as competitive by the Alder Board.

45. The Solicitation Statement, however, fails to disclose whether Alder entered into any non-disclosure agreements ("NDAs") that contained a standstill provision with a "don't ask, don't waive" ("DADW") provision (including its time of enforcement) that would preclude

11

potential buyers from making a superior offer for the Company.

46. Defendants began to speak on this subject by revealing that the NDAs that Alder entered into with Lundbeck and two other undisclosed parties contained standstill provisions.[2] Defendants, therefore, had a duty to disclose and should disclose whether Alder's NDAs contain standstills with DADW provisions.

47. Without this information, Alder shareholders may have the mistaken belief that potential buyers are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Alder shareholder would want to know, prior to tendering their shares to Lundbeck, whether other potential buyers are or were foreclosed from submitting a superior proposal.

48. Further, the Solicitation Statement states that, "[d]uring February and March 2019, Alder received proposed term sheets from five (5) potential counterparties for the Ex-U.S. Partnership, including Lundbeck."

49. The Solicitation Statement, however, fails to disclose the terms and values of all term sheets Alder received from these five (5) potential counterparties, including the "terms for the Ex-U.S. Partnership [submitted by a counterparty] that were not viewed as competitive by the Alder Board[,]" during the process leading up to the Proposed Transaction.

50. The Solicitation Statement also fails to disclose those counterparties who were informed by Alder or its representatives that Alder was interested in a broader transaction (such as

---

[2] Specifically, the Solicitation Statement provides that "Alder entered into the Nondisclosure Agreement with Lundbeck on January 9, 2019, which contained a standstill provision. Two (2) other nondisclosure agreements entered into by Alder contained standstills which, by their terms, remain in effect following the announcement of this transaction and the execution of the Merger Agreement." *See* Solicitation Statement at 13.

being wholly acquired) than merely a deal for the "Ex-U.S. Partnership."[3]

51. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Alder shareholders.

## COUNT I
### For Violations of Section 14(e) of the Exchange Act
### Against All Defendants

52. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

53. Section 14(e) of the Exchange Act states, in relevant part:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

54. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(e) of the Exchange Act.

55. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(e) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement

---

[3] The Ex-U.S. Partnership refers to Alder's active exploration of a "potential partnership regarding the commercialization of Eptinezumab outside of the United States[,]" which commenced in September 2018.

with respect to the Proposed Transaction.

56. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

57. Defendants acted knowingly or with deliberate recklessness in filing or causing the filing of the materially false and misleading Solicitation Statement.

58. By reason of the foregoing, Defendants violated Section 14(e) of the Exchange Act.

59. Because of the false and misleading statements in the Solicitation Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### For Violations of Section 14(d)(4) of the Exchange Act and Rule 14d-9 Promulgated Thereunder
### Against All Defendants

60. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. Defendants caused the Solicitation Statement to be issued with the intent to solicit shareholder support for the Proposed Transaction.

62. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers. Specifically, Section 14(d)(4) states, in relevant part:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

63. SEC Rule 14d-9(d), adopted to implement Section 14(d)(4) of the Exchange Act, states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

64. In accordance with SEC Rule 14d-9, Item 8 of Schedule 14D-9 requires that a company:

> Furnish such additional material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading.

65. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Solicitation Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9.

66. Each of the Individual Defendants, by virtue of their positions within the Company as officers and/or directors, were aware of materially false and/or misleading and/or omitted information but failed to disclose such information, in violation of Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Solicitation Statement with respect to the Proposed Transaction.

67. Defendants acted knowingly or with deliberate recklessness in filing the materially false and misleading Solicitation Statement which omitted material information.

68. The false and misleading statements and omissions in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.

## COUNT III
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

69. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Solicitation Statement.

71. Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Solicitation Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

72. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Solicitation Statement at issue contains

the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Solicitation Statement.

73. In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Solicitation Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

74. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

75. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 14(e), 14(d)(4), and Rule 14d-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and the tender offer in connection with the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to the Company's shareholders;

B.  In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding Plaintiff rescissory damages;

C.  Declaring that Defendants violated Sections 14(e), 14(d)(4), and 20(a) of the Exchange Act, and Rule 14d-9 promulgated thereunder;

D.  Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expenses and expert fees; and

E.  Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 2, 2019          Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
375 Park Avenue, Suite 2607
New York, NY 10152
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
Email: zhalper@halpersadeh.com

*Counsel for Plaintiff*